IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 08-873-TUC-RCC (HCE) |
| Plaintiff, ) | **REPORT & RECOMMENDATION** |
| vs. ) | |
| Frank B. Leunen, Jr., ) | |
| Defendant. ) | |

Defendant Frank B. Leunen, Jr., (hereinafter "Defendant") filed a Motion to Suppress Evidence (Doc. No. 18); an Amended Motion For Inspection of Physical Evidence (Doc. No. 21); and a Motion For Production of Photographs (Doc. No. 20). The Government filed a Response in Opposition to Defendant's Motion to Suppress (Doc. No. 25); and a Response to Defendant's Amended Motion for Inspection of Physical Evidence and Motion for Production of Photographs (Doc. No. 26). Defendant's Motion to Suppress came on for hearing on October 29, 2008.

For the reasons stated herein, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Suppress Evidence because Defendant lacks standing. By such recommendation, Defendant's Amended Motion for Inspection of Physical Evidence and Motion for Production of Photographs are rendered moot.

1 **I. PROCEDURAL AND FACTUAL HISTORY**

2 **A. Charge**

3 Defendant was charged by indictment (Doc. No. 6) on July 9, 2008 with violating
4 Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) in that on or about June 13, 2008 at or near
5 Douglas, Arizona in the District of Arizona he knowingly and intentionally possessed, with
6 the intent to distribute, approximately 75 kilograms of marijuana.

7 **B. Motions**

8 **1. Defendant's Motion to Suppress Evidence**

9 **a.    Defendant's Factual Position**

10 Defendant, who did not testify, alleged in his Motion to Suppress Evidence that on
11 June 13, 2008 Border Patrol Agent Tait Seelhorst (hereinafter "Agent Seelhorst") received
12 a radio call informing him that an anonymous caller notified the Border Patrol in Lordsburg,
13 New Mexico that three people were loading "contraband" onto a white utility truck
14 (hereinafter "truck" or "vehicle"). Thereafter and on that same date, Agent Seelhorst saw a
15 similar truck being driven southwest on Highway 80 near Douglas, Arizona. Agent Seelhorst
16 activated the emergency equipment on his service vehicle to conduct an immigration
17 inspection of the driver. Agent Seelhorst claims to have seen burlap covered bundles in the
18 back of the truck before he activated his emergency equipment. (Motion to Suppress
19 Evidence, p. 2).

20 Defendant alleges that he responded to the activation of emergency lights and siren
21 by "slow[ing] down his vehicle, pull[ing] to the right, and [bringing] the vehicle to a stop
22 before exiting." (*Id.* at p.4) Defendant thus yielded to law enforcement and a stop had
23 occurred despite Defendant failing to put the transmission in "park" or engaging the brake,
24 and despite Defendant running from the vehicle. (*Id.*)

25 **b. Defendant's Argument**

26 Defendant opines that the anonymous tip lacked sufficient predictive information that
27 could be corroborated, providing indicia of reliability, e.g., a description of a circuitous route

28

- 2 -

to be taken; or that items being loaded were contraband; and the anonymous caller was unknown, untested and unreliable. Thus there was no reasonable suspicion to stop Defendant.

Defendant opines that he yielded to law enforcement and that a seizure occurred based upon less than reasonable suspicion.

## 2. Government's Response in Opposition to Motion to Suppress Evidence
### a.  Government's Factual Position

The Government alleges that on June 13, 2008 at 9:00 a.m. the Douglas, Arizona Border Patrol received a phone call from the Lordsburg, New Mexico Border Patrol Station radio dispatch advising that an anonymous caller had seen a white utility truck being loaded with contraband near marker 393 on Highway 80 East. The anonymous caller provided the license plate letters and numbers, (CF92355) and described the truck as being driven erratically and heading towards the Douglas city limits. (Government's Response in Opposition to Defendant's Motion to Suppress, pp.1-2).

Approximately 8 to 9 minutes later Agent Seelhorst observed a truck matching the description given by the Lordsburg, New Mexico Border Patrol Station with the same license plate letters and numbers. (*Id.* at p.2) Agent Seelhorst began to follow the truck and he could see what appeared to be burlap covered bundles in the bed of the truck. (*Id.*) Agent Seelhorst attempted to stop the vehicle by activating his emergency equipment. (*Id.*) The driver[1] jumped out of the truck and Agent Seelhorst followed it as it slowed and collided with a tree. (*Id.*)

Agent Seelhorst maintained surveillance of the individual who had jumped out of the truck and took chase on foot while giving out orders to the individual to stop running. (*Id.*) The individual was seen running through an alley, jumping over a fence, and entering a residence through an open window. (*Id.*) Agent Seelhorst heard people yelling from within the residence and soon thereafter observed the individual he had been pursuing come out of

---

[1]There were no allegations made or testimony given that there was anyone else in the truck. This Court can only assume that the sole occupant of the truck was the driver.

- 3 -

1 the same window the individual was seen entering. (*Id.*) At approximately 9:18 a.m. Agent
2 Seelhorst caught the individual in the driveway of an apartment. The individual who jumped
3 out of the truck, was chased, and ultimately detained was Defendant. (*Id.* at pp.2-3).

4 An inventory conducted of the truck revealed burlap bags containing marijuana
5 wrapped in Christmas paper, with a total weight of 75 kilograms. (*Id.*) Defendant was
6 advised of his rights per *Miranda*. (*Id.*) Defendant made incriminating and inculpatory
7 statements. (*Id.*)

### b. Government's Argument

9 The Government posits that Defendant's Fourth Amendment rights were not violated
10 inasmuch as he had no reasonable expectation of privacy having abandoned the truck.
11 Further, the question of reasonable suspicion to stop the vehicle need not be addressed
12 inasmuch as Defendant was not seized until after an extended foot chase. Moreover,
13 Defendant's refusal to yield to Agent Seelhorst's emergency equipment, jumping out of and
14 abandoning the moving truck, and subsequent foot chase amount to reasonable suspicion.
15 The Government urges that Defendant's lack of standing alone obviates the merits of
16 Defendant's Motion to Suppress Evidence challenging reasonable suspicion for the stop.

### 3. Defendant's Amended Motion for Physical Inspection and Motion for Production of Photographs

Defendant opines that there was no reasonable suspicion for Agent Seelhorst to stop
Defendant. In support of this position Defendant seeks to inspect the truck and seized
bundles to take measurements and photographs to show that the seized bundles were not
clearly visible to Agent Seelhorst as he followed Defendant.

Defendant opines that the Government provided photocopies of 1) one photograph of
seven bundles; 2) two photographs of seven bundles with redacted information on placards;
and 3) one photograph with redacted information. Defendant maintains that there are other
photographs material to the issue of reasonable suspicion, specifically whether Agent
Seelhorst could clearly see bundles in the back of the truck evidenced by 1) photographs of

- 4 -

other items of evidence seized; 2) photographs of the truck; and 3) photographs of burlap wrapping.

### 4. Government's Response to Defendant's Amended Motion for Inspection of Physical Evidence and Motion for Production of Photographs

The Government posits that inspection and measurements of the truck and bundles by Defendant in support of Defendant's Motion to Suppress Evidence based on lack of reasonable suspicion, is unwarranted in light of Defendant's failure to yield to a show of authority, abandonment, and flight amounting to lack of standing.

## II. TESTIMONY

On October 29, 2008 Agent Seelhorst was called by Defendant and testified as an adverse witness. Consequently, he was cross-examined by Defendant and direct-examined by the Government.

Agent Seelhorst testified that on June 13, 2008 at 9:10 a.m. he was in a marked Border Patrol vehicle when he first observed a white utility truck that he began to follow. (Agent Seelhorst testimony pp.23,26,43 (hereinafter "Seelhorst p._")) Agent Seelhorst followed the truck for two minutes before activating his emergency equipment. (Seelhorst pp. 27-28) Agent Seelhorst maintained a distance of one car length to less than ten feet from the truck as he followed. (*Id.* at pp. 29-30).

The truck slowed to between five and ten miles per hour. (*Id.* at pp. 31-32) Upon Agent Seelhorst activating his emergency equipment he observed the driver of the truck, identified as Defendant, instantaneously jump out of the truck. (*Id.* at pp. 31, 44) Defendant landed on his feet. (*Id.* at p. 32) The driverless truck came to an abrupt stop when it collided with a tree on the side of the road. (*Id.* at p. 39) The abrupt stop occurred approximately four seconds after the Defendant jumped out. (*Id.* at pp. 39-40) Agent Seelhorst then stopped his Border Patrol vehicle by the curb. (*Id.* at p. 41) Defendant did not wait for Agent Seelhorst after jumping out; rather, he looked both ways and ran across the street. (*Id.* at p. 44) Agent Seelhorst initially ran to the truck, but once other agents arrived on the scene he chased after Defendant on foot. (*Id.* at pp. 45-46).

1   Agent Seelhorst, chased Defendant from twenty yards behind , yelling several times
2   for Defendant to stop running. (*Id.* at pp. 46) Defendant continued running from Agent
3   Seelhorst, during which time Defendant jumped over a cinder block fence. (*Id.* at p. 47)
4   Agent Seelhorst lost sight of Defendant for approximately six seconds but could still hear
5   Defendant's footsteps. (*Id.*) Once Agent Seelhorst negotiated the cinder block fence he saw
6   Defendant jump through an apartment window. (*Id.* at pp.48-49).

7   Agent Seelhorst heard yelling coming from within the apartment Defendant had
8   entered only to see him exit a few seconds later via the same window Defendant had jumped
9   through. (*Id.* at pp. 49-50) Defendant soon thereafter submitted to Agent Seelhorst's and two
10  other agent's authority. (*Id.* at pp. 50-51).

11  **III. LAW AND DISCUSSION**

12  The United States Constitution protects "[t]he right of the people to be secure in their
13  persons, houses, papers, and effects against unreasonable searches and seizures...." *U.S.*
14  *Const. amend. IV*. It is also well-settled and established law that the Fourth Amendment
15  protects places and items wherein a person has a reasonable expectation of privacy. *Smith*
16  *v. Maryland,* 442 U.S. 735 (1979): *see United States v. Wong,* 334 F.3d 831, 839 (9th Cir.
17  2003). Therefore, a criminal defendant can seek to suppress evidence obtained in violation
18  of the Fourth Amendment, only if that defendant demonstrates that his Fourth Amendment
19  rights were violated by the challenged search or seizure. *United States v. Caymen,* 404 F.3d
20  1196, 1199 (9th Cir. 2005). To demonstrate that his Fourth Amendment rights were violated,
21  a criminal defendant must establish (1) a subjective expectation of privacy and (2) an
22  objectively reasonable expectation of privacy. *Smith,* 442 U.S. at 740; *Caymen,* 404 F.3d at
23  1199. Thus, a defendant charged with a crime of possession, as Defendant herein is charged,
24  "may only claim the benefits of the exclusionary rule if [his] own Fourth Amendment rights
25  have in fact been violated." *United States v. Salvucci,* 448 U.S. 83, 85 (1980).

26  The burden of proof is on a defendant to demonstrate that he has a reasonable
27  expectation of privacy. *Minnesota v. Carter,* 525 U.S. 83 (1998); *Caymen, 404 F.3d at 1199.*
28  However, no person can have a reasonable expectation of privacy in an item that has been

abandoned. *Hester v. United States,* 265 U.S. 57, 58 (1924). The government must establish by a preponderance of the evidence that a defendant's words and/or conduct would lead a reasonable person to believe the defendant relinquished his property interest in the item seized. *United States v. Basinski,* 226 F.3d 829, 836 (9th Cir. 2000) (*citing United States v. Stephens,* 206 F.3d 914, 917 (9th Cir. 2000)); *see also United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir. 1986). The totality of the circumstances are examined with particular focus on explicit denials of ownership and to physical relinquishment of the property. *Basinski,* 226 F.3d at 837 (*citing United States v. Chandler,* 197 F.3d 1198, 1200 (8th Cir. 1999); *United States v. Liu,* 180 F.3d 957, 960 (8th Cir. 1999); *United States v. Ramos,* 12 F.3d 1019, 1025 (11th Cir. 1994)); *Nordling,* 804 F.2d at 1469.

In determining whether a person intends to retain a privacy interest in property, a person's words, acts and other objective facts must be examined. *United States v. Jackson,* 544 F.2d 407, 409 (9th Cir. 1976). These three considerations are not conjunctive and words alone which disclaim ownership in property can be sufficient to demonstrate abandonment. *United States v. Burnette,* 698 F.2d 1038, 1948 (9th Cir. 1983) (the defendant's conduct subsequent to words construed as disclaimer of ownership can support a finding that the defendant intended to retain a reasonable expectation of privacy in the object.).

The existence of an expectation of privacy "is a threshold standing requirement, and analysis cannot proceed further without its establishment." *United States v. Cruz-Jimenez,* 894 F.2d 1, 5 (1st Cir. 1990). It is a defendant's burden to prove standing. *United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir. 1993). A defendant cannot by mere pleading alone require the government to go forward with evidence to dispel his claim to standing. Thus, a defendant cannot rely upon the government's lack of such evidence "to discharge his allotted burden of proof, nor may a court overlook a defendant's failure to carry that burden." *Id.* at 1449. Herein, Defendant was afforded an opportunity to meet his burden. He called and cross-examined Agent Seelhorst as an adverse witness. *See* Fed.R.Evid. 611(a), (c). The questioning of Agent Seelhorst was limited and confined to the singular issue of standing.

A defendant is not obligated to testify regarding standing. However, if "a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States,* 390 U.S. 377, 394 (1968). Defendant herein opted not to testify. This Court has no evidence[2] before it as to what Defendant was thinking when he jumped out of the still-moving truck or his motivations for his driving actions that might otherwise establish a subjective expectation of privacy.

It has long been recognized that:

> abandonment is a question of *intent*. The inquiry should focus on whether *through words, acts or other objective indications,* a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure.

*Nordling,* 804 F.2d at 1469 (*citing United States v. Cella,* 568 F.2d 1266, 1283 (9th Cir. 1977); *Jackson,* 544 F.2d at 409) (*emphasis added).*

Defendant has made claims in his Motion to Suppress Evidence, but has presented no evidence in support of same, that he "did not react to merely being followed by law enforcement....[That], in response to the activation of emergency lights and siren, [he] slowed down his vehicle, pulled to the right, and brought the vehicle to a stop before exiting. At that point, [he] had yielded to law enforcement and a stop had occurred." (Defendant's Motion to Suppress Evidence, p.4) Nor has Defendant presented evidence that he "did not speed away when the Border Patrol Agent activated his vehicle's emergency lights and siren...[and]

---

[2]To have standing, a defendant must demonstrate *actual standing*, i.e., assert during the motion to suppress either a proprietary interest in the premises searched or a possessory interest in the articles seized. *United States v. Prueitt,* 540 F.2d 995, 1004-1005 (9th Cir. 1976). Assertions in pleadings or argument to the court is insufficient. "First, without an initial ruling or finding of standing *based on the evidence,* there is nothing to contradict as there are no '*facts*' yet established...Second, if the court does not rule *on the evidence*, the defendant in some instances would never have to prove that 'his own Fourth Amendment rights were violated by the challenged search and seizure.'" *Singleton,* 987 F.2d at 1449 (*quoting Rakas v. Illinois,* 439 U.S. 128, 130-131 n. 1 (1978))(emphasis added).

- 8 -

1 [i]nstead, ...responded by slowing the truck, pulling it over, and bringing the truck to a stop."
2 (*Id.* at p. 5).

3 The only evidence before this Court is Agent Seelhorst's testimony that while
4 following Defendant, Defendant slowed to approximately 10 miles per hour in the right hand
5 lane and, almost simultaneous to the Agent activating his emergency equipment, Defendant
6 jumped out of the truck, landed on his feet, and ran away while the vehicle went off the road
7 coming to a stop when it collided with a tree. The evidence belies Defendant's claim that he
8 yielded to a show of authority and was thus seized. The more reasonably objective and
9 plausible explanation for Agent Seelhorst's observations of Defendant is that Defendant
10 slowed the truck so as to jump out as safely as possible giving Agent Seelhorst the choice of
11 dealing with an aimlessly moving driverless truck endangering the public and/or property and
12 "buying time" for Defendant to escape[3], or ignoring such truck and instead pursuing
13 Defendant. Agent Seelhorst opted to address the truck first benefitting Defendant's ploy but
14 momentarily, for Agent Seelhorst soon took up foot pursuit of Defendant.

15 Defendant unequivocally relinquished any proprietary interest in the truck or
16 possessory interest in its contents as evidenced by actions speaking louder than words:
17 bailing out of a moving vehicle without regard for public safety followed by frenzied flight
18 to avoid his seizure. Only when Defendant was physically subdued and forced to stop
19 running from Agent Seelhorst was he seized. *California v. Hodari D.,* 499 U.S. 621, 626
20 (1991); *United States v. Hernandez,* 27 F.3d 1403, 1406 (9th Cir. 1994); *United States v.*
21 *Santamaria-Hernandez,* 968 F.2d 980, 983 (9th Cir. 1992).

---

[3]Q.[Government]: Did you run a registration check of that [truck]?
 A.[Agent Seelhorst]: Yes, sir.
 Q.[Government]: And who did–was that [truck] registered to the Defendant?
 A.[Agent Seelhorst]: No, sir.
 Q.[Government]: Was it registered to some other person?
 A.[Agent Seelhorst]: Some other person, sir.
 (Seelhorst p. 51).

- 9 -

## IV. CONCLUSION

Defendant unequivocally disclaimed ownership by his abandonment of the truck and relinquished any expectation of privacy in the truck or its contents. Defendant did not testify, submit an affidavit, or introduce evidence which supports his claimed intent to retain a privacy interest in the truck or its contents. Consequently, Defendant lacks standing to contest the search of the truck and seizure of the contraband therein. *See United States v. Decoud,* 456 F.3d 996, 1002 (9th Cir. 2006); *Stephens,* 206 F.3d at 916-917; *Nordling,* 804 F. 2d 1466; *Cella,* 568 F.2d 1266.

## V. RECOMMENDATION

By a totality of the circumstances review, Defendant has failed to meet his burden of proving that he had an expectation of privacy in the truck or its contents. The Government has shown by a preponderance of the evidence that Defendant relinquished any proprietary interest in the truck or a possessory interest in its contents. Defendant thus lacks standing to seek suppression of the contents of the truck.

For the reasons stated above, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Suppress Evidence (Doc. No. 18) and render as moot Defendant's: (1) Amended Motion for Inspection of Physical Evidence (Doc. No. 21); and (2) Motion for Production of Photographs (Doc. No. 20).

Pursuant to 28 U.S.C. §636(B) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CR 08-873-TUC-RCC.**

Failure to file objections in accordance with Fed.R.Cr.P. 59 will result in waiver of the right to review.

DATED this 17th day of November, 2008.

_____
Héctor C. Estrada
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 11 -